UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JANET FLEMING, individually and as Executor of the Estate of CURTIS FLEMING, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 14-1482 ) |
| RELIASTAR LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## O R D E R

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Motion [12] is GRANTED.

### BACKGROUND

Curtis Fleming ("Fleming") was an MRI technologist for Alliance Healthcare Services, and as such, was a participant in the Alliance Personal Accident Insurance Plan (the "Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., and provides accidental death benefits ("AD&D benefits") to participants. Defendant, ReliaStar Life Insurance Company ("ReliaStar"), is the claims administrator of the Plan. Fleming elected basic AD&D benefits in the amount of $64,000 and supplemental AD&D benefits in the amount of $127,000 under the Plan but did not name a beneficiary. Fleming also had basic life insurance benefits under the Alliance group plan in the amount of $64,000.

Sometime late in the evening of January 26, 2013 or early in the morning of January 27, 2013, Fleming went out to eat with friends and then drove to a friend's home near Basco, Illinois.

It is undisputed that he had been drinking alcohol. Around 2:30 a.m., he went outside to warm up a van for a friend, Amanda Broadwell ("Broadwell"). However, Fleming did not come back inside the house. Minutes later, Broadwell discovered that the van was gone and called another friend for a ride home. On the way home, Broadwell came upon the farm field where Fleming had crashed the van and called the Hancock County Sheriff's Department at 6:22 a.m.

According to the Illinois Traffic Crash Report (the "Accident Report"), Fleming drove the van northbound on County Road 1600 East, approaching County Road 1200 North. Before reaching the intersection, he crossed over the roadway into the opposite lane and entered the ditch on the west side of the road. He then continued northbound approximately 200 feet before striking an embankment at the intersection with the passenger front end of the van, overturning and entering a field. The distance from the place Fleming crossed over into the southbound lane to the final resting spot of the van was 386 feet. Fleming was ejected from the van, and his body was found 45 feet south of the van. The Accident Report listed the fact that Fleming had been drinking as the primary contributing cause of the accident and improper lane usage as the secondary cause. The "primary contributing cause" is defined as "the factor which is most significant in causing the crash, as determined by the officer's judgment," and the "secondary cause" is "the second most significant factor in causing the crash, as determined by the officer's judgment." Although the Accident Report noted that the weather at the time was sleet and hail and that the road was wet, neither of those conditions was listed in the report as contributing to the accident.

Hancock County Coroner arrived on the scene. The officers explained that Fleming's vehicle had been traveling northbound on the west side of the roadway and began to roll, ejecting Fleming, who was not wearing a seatbelt. The Coroner ordered a toxicology report, as required by law. The

toxicology report listed Fleming's blood ethanol level at 0.401% and his urine ethanol level at 0.503%. On February 20, 2013, the Coroner prepared a Coroner's Report noting the toxicology results, as well as that the highways were icy from freezing rain, no indication of foul play or suicide. The time of death was determined to be approximately 2:45 a.m. Fleming's death certificate was prepared on February 20, 2013, stating that the cause of death was blunt force trauma to the head and chest and that the manner of death was accidental.

On March 1, 2013, Alliance submitted claim materials for Plan benefits to ReliaStar, along with a death claim form signed by Fleming's mother, Janet Fleming. On March 13, 2013, Alliance submitted a death claim form signed by Fleming's father, Randall Fleming. Under the terms of the Plan, Fleming's parents were his beneficiaries, as Fleming had made no designation, was not married, and had no children. On March 15, 2013, ReliaStar paid $64,000 in basic life insurance benefits to Janet and Randall, $32,000 each. The Explanation of Benefits noted that their claim for benefits under the Plan was pending and subject to the usual investigation.

After receiving a copy of the Coroner's Report, ReliaStar notified Janet Fleming on April 3, 2013, that her claim for AD&D benefits was not payable, citing the Coroner's Report and relevant terms of the Plan. Specifically, the letter cited the Intoxication Exclusion, Fleming's blood alcohol content, and his urine ethanol content. Pursuant to ERISA, ReliaStar advised Janet Fleming of her right to appeal the adverse determination of her claim, obtain relevant documents, and submit comments, documents, records, and information within 60 days. On May 16, 2013, Janet Fleming appealed the decision, objecting to the toxicologist's methodology and findings and opining that the accident was caused by icy roads and improper signage. The appeal did not dispute that Fleming had

been drinking on the day of the accident or the Accident Report's finding that his drinking was the primary contributory cause of the accident.

On appeal, ReliaStar's Appeals Committee consulted with Dr. Brad Heltemes. Dr. Heltemes opined as follows:

> Legal intoxication is defined as 0.08% Ethanol (80 mg/dL) so this level of 0.401% is 5 times above the legal limit. The urine level is consistent – it runs about 1.3x higher than the blood on average. There is serious impairment of physical and mental functioning at this level and it very likely contributed to the crash.

Dr. Heltemes further stated that gas chromatography is the usual method used for measuring blood alcohol levels and that there was nothing to indicate that the toxicology report was inaccurate. The entire file, including all of the information provided by Janet Fleming, was reviewed. The Committee concluded that Fleming's intoxication directly or indirectly caused his death and that the claim for benefits was excluded under the Intoxication Exclusion. Janet Fleming was notified of this decision on July 26, 2013.

Janet Fleming originally filed suit against ReliaStar in the Circuit Court for Hancock County for breach of contract in the payment of AD&D benefits under the Plan. The case was removed to federal court under federal question jurisdiction based on the ERISA claim. ReliaStar has now moved for summary judgment. The matter is fully briefed, and this Order follows.

    A.    **Legal Standard**

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to

the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences reasonably drawn from the facts must be construed in favor of the non-movant. However, any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. The moving party has the responsibility of identifying portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the evidence on record could not lead a reasonable jury to find for the non-moving party, then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

**B.    Analysis**

Plaintiff brings suit pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, which authorizes a participant or beneficiary of an employee welfare benefit plan to bring a civil action "to recover benefits due to [her] under the terms of [the] plan . . . ." 29 U.S.C. § 1132(a)(1)(B). A challenge to a denial of benefits brought under § 1132(a)(1)(B) is to be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *Phillips v. Lincoln National Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir. 1992), *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993). If the administrator has discretionary authority to determine benefits, the Court may overturn the administrator's decision only if it was arbitrary and capricious. *Firestone*, 489 U.S. at 115. In this case, it is undisputed that the Plan does not give ReliaStar discretionary authority to interpret the plan and make benefit determinations. Accordingly, the Court's review will be *de novo*.

Although Plaintiff bears the burden of establishing eligibility for benefits, ReliaStar must demonstrate that the exclusion applied to deny benefits is applicable. *Fuha v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 (7th Cir. 1994); *Santealla v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). The language of the Plan governs benefits determinations, and the words of the Plan must be given their "plain, ordinary and popular meaning." *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir. 1997); *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998). Exclusions must be enforced if the terms are clear, definite, and explicit. *Id.*, at 969.

Here, the Plan defines "accidental injury" as "bodily injury resulting from a sudden, violent, unexpected and external event." The benefit is paid for covered losses due to a covered accident if all of the following conditions are met:

- You are covered for AD&D Insurance on the date of the accident.
- The loss occurs within 180 days of the date of the accident.
- The cause of the loss is not excluded.

It is only the third requirement that is at issue in this case. In that respect, the Plan states that it does not pay benefits for loss directly or indirectly caused by:

- Your intoxication. Intoxication means your blood alcohol content meets or exceeds the legal presumption of intoxication under the laws of the state where the accident occurred (referred to throughout as the "Intoxication Exclusion").

Plaintiff argues that ReliaStar has failed to prove that Fleming's intoxication was greater than the limits as formulated under Illinois law, that is 0.08 or more grams of alcohol per 100 milliliters of blood. 625 ILCS 5/11-501(a)(1) and 501.2(a)(5). Specifically, she contends that there is nothing in the record to establish that the "Blood Ethanol = 0.401%" indicated in the toxicology report and Coroner's Report represent the blood alcohol content or are equivalent to measurements set forth in grams per 100 milliliter of blood. Absent this information, Plaintiff maintains that there is no proof that the Intoxication Exclusion applies to support the denial of payment.

However, the record does contain the medical opinion of Dr. Heltemes, which states: "Legal intoxication is defined as 0.08% Ethanol (80 mg/dL) so this level of 0.401% is 5 times above the legal limit." In *Steele v. Life Insurance Company of North America*, 507 F.3d 593, 597 (7th Cir. 2007), the toxicology report stated "Ethyl Alcohol 0.255," and this was acknowledged as evidence of the blood-alcohol level. In *Cozzie*, the blood alcohol level was listed as .252% and described as "more than 2+ times the legal limit under Illinois law." 140 F.3d at 1106. The only reasonable conclusion to draw from this evidence and caselaw is that the 0.08% figure in the statute and the 0.401% figure in the toxicology report are equivalent measures of the percentage of alcohol in the blood. Accordingly, ReliaStar has sufficiently established that Fleming was intoxicated at the time of his accident.

This leaves the issue of whether Fleming's intoxication directly or indirectly caused his accident. Plaintiff argues that although the Accident Report lists Fleming's drinking as the primary

contributing cause of the accident, that report was completed by a police officer, and his drinking is not listed on his Death Certificate, which cites blunt force trauma to the head and chest as the cause of death. However, under the terms of the Plan, intoxication does not have to be the sole, or even primary, cause of Fleming's death, as the Plan unambiguously excludes payment of benefits for losses "directly or indirectly" caused by the insured's intoxication. The toxicology results and Coroner's Report indicate a blood alcohol level approximately five times the legal limit in Illinois. The medical review by Dr. Heltemes acknowledges that at this level, there would have been serious impairment of physical and mental functioning. The Accident Report indicates that Fleming crossed the center lane, entered the ditch, and continued in the ditch for approximately 200 feet until he struck an embankment; Fleming's drinking is listed as the primary contributing cause of the accident.

    The Court is not unsympathetic to the fact that Plaintiff experienced the tragic loss of her son at such a young age. That being said, the Court's sympathy cannot change the law in order to achieve a more compassionate result. After careful consideration of the record in this case, the Court finds that the administrative record contains adequate, uncontradicted evidence that Fleming's accident and injuries were caused directly or indirectly by his intoxication. As a result, ReliaStar's denial of Plan benefits pursuant to the Intoxication Exclusion was proper.

## CONCLUSION

    For the reasons set forth above, the Motion for Summary Judgment by Defendants [12] is GRANTED. This matter is now TERMINATED.

    ENTERED this 2nd day of November, 2015.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge